UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nico Redding,

              Plaintiff,

v.

Minnesota Department of Corrections, et al.,

              Defendants.

Case No. 21-cv-1930 (KMM/LIB)

**REPORT AND RECOMMENDATION**

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendant Centurion of Minnesota, LLC's (hereinafter "Defendant Centurion") Motion to Dismiss, [Docket No. 69], and Defendants the Minnesota Department of Corrections, Paul Schnell, Michelle Smith, Guy Bosch, Andrew Reed, Victor Wanchena, Tina Sneen, Monice Arons, Lynn Noll, Nanette Larson, Sheryl Mayer, Capt. Andrew Darling, Marrisa Williams, and Brianna Erickson's (hereinafter collectively the "DOC Defendants") Motion for Summary Judgment. [Docket No. 75].

For the reasons discussed herein, the undersigned recommends that Defendant Centurion's Motion to Dismiss, [Docket No. 69], be **GRANTED in part** and **DENIED in part**; the DOC Defendants' Motion for Summary Judgment, [Docket No. 75], be **GRANTED in part** and **DENIED in part**; and the present action be **DISMISSED without prejudice**.

**I.     Background**

Plaintiff initiated the present action on August 26, 2021, by filing his Complaint. [Docket No. 1]. Plaintiff filed his operative Amended Complaint on December 14, 2021. [Docket No. 17].

Plaintiff's Amended Complaint names as Defendants Paul Schnell, Capt. Andrew Darling, Michelle Smith, Guy Bosch, Andrew Reed, Victor Wanchena, Tina Sneen, Monice Arons, Lynn Noll, Nanette Larson, Sheryl Mayer, Marrisa Williams, Brianna Erickson, the Minnesota Department of Corrections, and Centurion of Minnesota, LLC. (Amended Compl. [Docket No. 17]). Plaintiff sues the individual Defendants in only their individual capacities. (Amended Compl. [Docket No. 17]; Plf.'s Notice [Docket No. 37]).

Plaintiff is presently incarcerated at the Minnesota Department of Corrections Facility in Stillwater, Minnesota (hereinafter "MCF Stillwater"). (Amended Compl. [Docket No. 17] at 3). In his Amended Complaint, Plaintiff alleges that the staff at MCF Stillwater has inadequately responded to the COVID-19 pandemic.[1] Specifically, Plaintiff alleges that the staff at MCF Stillwater failed to separate infected persons from uninfected persons; failed to implement adequate quarantine measures, including failing to create cells designed for quarantine; failed to implement adequate screening measures, including failing to have staff tested for COVID-19 prior to their work shifts; prevented inmates from implementing their own quarantine measures, including requiring Plaintiff to remove bedsheets he had put up to cover the bars on his cell; failed to provide adequate disease prevention training; failed to implement proper COVID-19 testing protocols; and failed to require the wearing of face masks in a timely manner. (Amended Compl. [Docket No. 17] at 5–6, 8, 13, 15–18). Plaintiff alleges that he was infected with the COVID-19 virus, and he "has experienced numerous post-infection" symptoms such as loss of taste and smell;

---

[1] As this Court has noted, COVID-19 is an infectious illness caused by a novel coronavirus which has become a global pandemic. The COVID-19 virus is thought to pass from one person to another through the expulsion of respiratory droplets (e.g., coughing or sneezing), but it is thought to also survive on various surfaces for varying periods of time. A person infected with COVID-19 may exhibit symptoms ranging from zero symptoms (asymptomatic COVID-19) to respiratory failure, kidney failure, and death. Thus, a person without symptoms may still spread the virus. According to the CDC, individuals with certain underlying medical conditions are at a higher risk for severe illness from COVID-19. See, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html. In response to the COVID-19 virus, there have been at least three vaccinees developed and approved for use in helping prevent the spread of the COVID-19 virus. See, https://www.cdc.gov/vaccines/covid-19/eua/index html.

2

"constant severe flare-ups of extreme arthritic pains [with] swelling in [his] knees," lower back, shoulders, and hips; and "severe hernia pains that stop [him] from walking . . . ." (Id. at 11).

Based on the allegations in his Amended Complaint, Plaintiff raises a single claim against each Defendant alleging that each Defendant violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (See, Id.). Specifically, Plaintiff alleges that the MCF Stillwater staff's allegedly inadequate response to the COVID-19 pandemic means each Defendant was deliberately indifferent to Plaintiff's serious medical need. (See, Id.). As relief, Plaintiff seeks monetary damages. (See, Id. at 20–32).

## II. DOC Defendants' Motion for Summary Judgment. [Docket No. 75].

The DOC Defendants move this Court for an Order dismissing Plaintiff's claims against them and the entry of judgment in their favor. (DOC Defs.' Mot. [Docket No. 75]). The DOC Defendants fail to specify whether they seek to have Plaintiff's claims dismissed with or without prejudice; however, a request for dismissal without a specification as to whether the dismissal sought is with or without prejudice is viewed as a request for dismissal with prejudice. See, Fed. R. Civ. P. 41(b). In support of their request, the DOC Defendants contend that dismissal of Plaintiff's claims is required because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. (DOC Defs.' Mem. [Docket No. 76]).

### A. Standard of Review

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). As the Eighth Circuit Court of Appeals has explained:

> Summary judgment should be granted if the evidence, viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact

3

exists and that the moving party is entitled to judgment as a matter of law. A party opposing summary judgment may not rest upon mere allegations or denials contained in the pleadings, but must, by sworn affidavits and other evidence, set forth specific facts showing that there is a genuine issue for trial.

Mehrkens v. Blank, 556 F.3d 865, 868–69 (8th Cir. 2009) (citations omitted). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

Nevertheless:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party does so, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. "If the moving party supports the motion with evidence, the opposing [non-moving] party must rebut it, or the court can consider the fact undisputed." Irish v. U.S. Dept. of Justice, Civ. No. 11-2703 (MJD/JJK), 2013 WL 451314, at *2 (D. Minn. Jan. 3, 2013) (citing Fed. R. Civ. P. 56(e)(2)), adopted by, 2013 WL 452576, rev'd on other grounds, 564 Fed. App'x 259 (8th Cir. 2014).

A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "[w]here the moving party fails to satisfy its burden to show initially the absence of a genuine issue concerning any

4

material fact, summary judgment must be denied even if no opposing evidentiary matter is presented." Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 393 (8th Cir. 1986).

"Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 526–27 (8th Cir. 2007). While the burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, the nonmoving party may not rest on mere allegations or denials in their pleadings, but the non-moving party must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). "Naked assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton v. University Healthcare Sys., L.L.C., 136 F. App'x 596 (5th Cir. 2005) (unpublished decision); see, Simms v. McDowell, No. 4:08cv-60-M, 2009 WL 3160353, at *5 (W.D.Ky. Sept. 25, 2009) (holding that speculation that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment."); Frevert v. Ford Motor Co., 614 F.3d 466, 473 (8th Cir. 2010); Bacon v. Hennepin Cty. Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008); Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995); Smith v. International Paper Co., 523 F.3d 845, 848 (8th Cir. 2008).

### B. Uncontested Material Facts[2]

The Minnesota Department of Corrections has a grievance procedure, outlined in DOC Policy 303.100, that incarcerated individuals may use to grieve nearly any issue concerning their conditions of confinement. (Quien Decl. [Docket No. 77] ¶ 2). Pursuant to DOC Policy 303.100, the first step an incarcerated individual must take to resolve issues related to their confinement is

---

[2] The Court views these facts in the light most favorable to Plaintiff, as the non-moving party.

the submission of an informal "kite" form to the relevant prison "staff members up the chain of command." (Id. ¶ 4).

If the incarcerated individual is dissatisfied with the responses received from the persons in the chain of command, the individual may submit a formal grievance to the prison's facility grievance coordinator. (Id. ¶ 5). This formal grievance must be submitted on a form bearing the title Minnesota Department of Corrections Offender Grievance, and the form must be submitted within thirty (30) days of when the issue being grieved most recently occurred. (Id.; Wanchena Decl. [Docket No. 79] ¶ 6). These "forms are posted and available to incarcerated individuals in each living unit at MCF-Stillwater." (Wanchena Decl. [Docket No. 79] ¶ 6). The incarcerated individual must attach the earlier kites and all related responses to the Minnesota Department of Corrections Offender Grievance form. (Id.).

If the incarcerated individual remains dissatisfied with the response received, the next step is for the incarcerated individual to submit a grievance appeal to the DOC's central office. (Id. ¶ 7). The grievance appeal must be submitted with twenty-one (21) days of facility's response to the incarcerated individual's initial grievance, and the appeal must be submitted on the Minnesota Department of Corrections Grievance Appeal form. (Id.).

There are, however, limited exceptions to this typical grievance process. (DOC Policy 303.100(C)(2)(b) [Docket No. 78-1] at 3). "Offenders who have received threats to their physical safety or well-being, or who can establish that they would be in danger if their complaint were to be known at the facility, may submit their facility grievance on the Facility Grievance form," here the Minnesota Department of Corrections Grievance form, "directly to the department grievance appeal authority at the central office in a sealed envelope marked 'Special Mail.'" (Id.).

The grievance database at MCF Stillwater reveals that Plaintiff has not filed any grievance with MCF Stillwater regarding the COVID-19 pandemic or any of the allegations contained within his Amended Complaint. (Wanchena Decl. [Docket No. 79] ¶¶ 9–10). Plaintiff did, however, attempt to send certain grievance forms directly to the DOC's Central Office.

On November 30, 2020, Plaintiff mailed a Minnesota Department of Corrections Grievance Appeal form directly to the DOC's Central Office. (Exhibit B [Docket No. 77-1]). On this form, Plaintiff described his belief that the COVID-19 pandemic presented a life-threatening risk to his wellbeing, as well as, his belief that the staff at MCF Stillwater was failing to adequately respond to the circumstances surrounding the COVID-19 pandemic. (Id.). Plaintiff also wrote that he was submitting his Grievance directly to the Central Office pursuant to DOC Policy 303.100(C)(2)(b).

On December 28, 2020, Plaintiff's November 30, 2020, Grievance was returned to him with a letter noting that he had failed to comply with DOC Policy 303.100. (Id.). The letter returning his November 30, 2020, Grievance informed Plaintiff that the first step he was required to complete was to attempt to resolve his issue through the use of a kite submitted to the appropriate staff person. (Id.).

On August 1, 2021, Plaintiff submitted another Minnesota Department of Corrections Grievance Appeal form directly to the Central Office. (Exhibit C [Docket No. 77-1]). Plaintiff again described his belief that the COVID-19 pandemic subjected him to a life-threatening risk, and his belief that the staff at MCF Stillwater was inadequately responding to the COVID-19 pandemic. (Id.). Plaintiff again wrote that he was submitting his Grievance directly to the Central Office pursuant to DOC Policy 303.100(C)(2)(b).

On August 18, 2021, Plaintiff's August 1, 2021, Grievance was returned to him with a letter noting that he had again failed to comply with DOC Policy 303.100. The August 18, 2021,

letter returning Plaintiff's August 1, 2021, Grievance again informed Plaintiff that the first step he was required to complete was to attempt to resolve his issue through the use of a kite submitted to the appropriate staff person. (Id.).

On August 26, 2021, Plaintiff initiated the present action by filing his Complaint. [Docket No. 1]. In both his original Complaint and his operative Amended Complaint, Plaintiff acknowledges that he has not exhausted the multi-step process for exhausting his administrative remedies. (Compl. [Docket No. 1] at 3; Amended Compl. [Docket No. 17] at 3). On the portion of Plaintiff's form-complaint inquiring as to the step he took in the "prisoner grievance procedure" Plaintiff wrote that he "used the grievance procedure[']s built in exception to the chain of command exhaustion requirement, policy 303.100, para. (C)(2)(B), authorized when risk of safety, health, danger to life exists." (Amended Compl. [Docket No. 17] at 3) (capitalization correct) (intermittent commas and parenthesis omitted).

### C. Analysis

The exhaustion of administrative remedies requirement is contained within the Prison Litigation Reform Act (hereinafter "PLRA"), which in relevant part states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"The PLRA's exhaustion requirement is mandatory." Robley v. Anderson, No. 2-cv-4199 (JRT/RLE), 2004 WL 742089, at *2 (D. Minn. Mar. 4, 2004) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "Congress intended section 1997e(a) to curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court." Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998). The

failure to exhaust the available administrative remedies is an affirmative defense, with the burden of proof falling on the defendant asserting such a defense, and it is not a matter of subject matter jurisdiction. Lenz v. Wade, 490 F.3d 991 993 n.2 (8th Cir. 2007) (citing Jones v. Bock, 549 U.S. 199 (2007)).

"The benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subject to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Hammett v. Cofield, 681 F.3d 945, 947 (8th Cir. 2012) (quotations omitted) (quoting Jones v. Bock, 549 U.S. 199, 219 (2007)). "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" Woodford v. Ngo, 548 U.S. 81, 89 (2006) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Moreover, "the PLRA exhaustion requirement" mandates not only exhaustion but "proper exhaustion." (Id.). "An exhaustion requirement protects a correctional institution's authority by compelling inmates 'to give the agency a fair and full opportunity to adjudicate their claims.'" Hammett, 681 F.3d at 947 (quoting Woodford, 548 U.S. at 90).

Moreover, the requirement to exhaust administrative remedies applies to all forms of relief sought. Booth v. Churner, 532 U.S. 731, 741 (2001). This includes conditions of confinement claims related to a facility's response to the COVID-19 pandemic. Harvey v. Minnesota Dep't of Corr., No. 21-cv-346 (WMW/JFD), 2021 WL 6808297, at *7 (D. Minn. Oct. 14, 2021), report and recommendation adopted as modified, 2022 WL 35748 (D. Minn. Jan. 4, 2022), aff'd, No. 22-1192, 2022 WL 1931060 (8th Cir. June 6, 2022); Bailey v. Minnesota Dep't of Corr., No. 21-cv-1927 (PAM/BRT), Order [Docket No. 69] (D. Minn. May 18, 2022).

The PLRA does not specify an exhaustion procedure. 42 U.S.C. § 1997e(a). Instead, for a prisoner's claim to be considered exhausted, the prisoner must complete the grievance procedure of the facility in which the prisoner is incarcerated. Jones, 549 U.S. at 218.

As discussed above, the Minnesota DOC has established a grievance procedure in Policy 303.100 for the resolution of prisoner complaints. This procedure involves three steps which must be completed in order: (1) the prisoner must attempt to informally resolve the complaint by filing a kite with the persons through the appropriate chain of command; (2) if informal resolution is unsuccessful after the prisoner has exhausted the relevant chain of command, then the prisoner must submit a facility grievance form to the facility's grievance coordinator; and (3) if the prisoner is dissatisfied with the response to his formal grievance, the prisoner must submit a grievance appeal to the DOC's Central Office.

Plaintiff does not dispute that he failed to follow the three-step administrative process provided for in Policy 303.100. Instead, Plaintiff argues that he was not required to comply with the three-step process because he complied with the exception provided for in Policy 303.100(C)(2)(b). (See, Plf.'s Mem. [Docket No. 83]; Plf.'s Mem. [Docket No. 86]). Specifically, Plaintiff argues that he should be permitted to use the exception to the three-step process provided in Policy 303.100(C)(2)(B) because it was "created to be in place for expedient quick review of issue/situations that present serious threats, danger," and "risks to personal safety and well being" such as in his situation. (Plf.'s Mem. [Docket No. 83] at 3). The Court finds Plaintiff's argument unpersuasive here.

On its face Policy 303.100(C)(2)(b) applies only to prisoners "who have received threats to their physical safety or well-being, or who can establish that they would be in danger if their complaint were to be known at the facility . . . ." (Policy 300.100(C)(2)(b) [Docket No. 78-1]).

"'Health and safety concerns related to COVID-19 are not the type of 'threats' covered by the exception' under Policy 303.100(C)(2)(b)." Bailey v. Minnesota Dep't of Corr., No. 21-cv-1927 (PAM/BRT), Order [Docket No. 69] (D. Minn. May 18, 2022) (quoting Harvey, 2021 WL 6808297, at *7). Moreover, Plaintiff fails to allege his grievance becoming known to the staff at MCF Stillwater would have caused him to experience retaliation as contemplated by Policy 303.100(C)(2)(b). See, Harvey, 2021 WL 6808297, at *7.

In summation, the Court finds that Plaintiff failed to exhaust his administrative remedies through the three-step process provided for in Policy 303.100, and, on the record now before the Court, Plaintiff has failed to demonstrate that any exception within Policy 303.100 applies to him. The Court thus concludes that the DOC Defendants have meet their burden of demonstrating that Plaintiff failed to exhaust his administrative remedies.

The burden now shifts to Plaintiff to demonstrate that his administrative remedies were unavailable to him so that he is exempt from the PLRA's requirements that prisoners exhaust their administrative remedies. See, Ross v. Blake, 578 U.S. 632, 642 (2016). The Supreme Court of the United States has set forth three limited circumstances when an administrative remedy is deemed "unavailable": 1) when the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643–44.

Although Plaintiff does make conclusory, passing references to certain administrative remedies being "unavailable" to him, he fails to specifically argue that any of the Ross exceptions is applicable to the present case. (See, Plf.'s Mems. [Docket Nos. 83, 86]). Moreover, even

11

construing all available evidence in his favor in the light most favorable to him, Plaintiff has not presented any evidence upon which this Court could make the reasonable inference that any of the Ross exceptions apply in the present case.

There is no indication in the record now before the Court that the administrative process for grievances at MCF Stillwater "operates as a simple dead end" of the kind contemplated by the first Ross exception. See, Ross, 578 U.S. at 643. Likewise, the record now before the Court lacks any indication that the staff at MCF Stillwater "thwart[ed]" Plaintiff "from taking advantage of a grievance process through machination, misrepresentation, or intimidation" as contemplated by the third Ross exception. Id. at 644.

Moreover, regarding the second Ross exception, the record now before the Court lacks any indication that the administrative process for grievances at MCF Stillwater is "so opaque that it becomes, practically speaking, incapable of use." See, Id. In fact, Plaintiff specifically notes that he was aware of the administrative process for grievances, but he merely possessed a subjective belief that he was entitled to use an expedited version of the process. Moreover, the unrefuted evidence now before the Court demonstrates that after he improperly attempted to utilize the expedited process, Plaintiff was twice, specifically and in plain language, informed that the first step in the grievance process was the submission of a kite to the appropriate staff person. (Exhibit B [Docket No. 76-1]; Exhibit C [Docket No. 76-1]). Neither Plaintiff's mere subjective belief that he should not be required to utilize the three-step grievance process nor his subjective belief that the staff persons involved with the three-step process would fail to adequately handle his complaints is relevant to whether one of the Ross exceptions is applicable here. See, Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000) (holding that § 1997e(a) does not permit the Court to consider an inmate's merely "subjective beliefs, logical or otherwise," in determining whether

administrative procedures are "available."); Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir. 2002).

For all the reasons discussed here, the Court finds that Plaintiff has failed to meet his burden of demonstrating that his administrative remedies were unavailable to him. Thus, the Court finds that Plaintiff's administrative remedies were available to him within the meaning of Ross. The Court previously concluded above that Plaintiff failed to exhaust his administrative remedies prior to the filing of this action. Consequently, the present action must be dismissed. See, e.g., Booth v. Churner, 532 U.S. 731, 741 (2001); Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000).

Therefore, to the extent the DOC Defendants' Motion requests that Plaintiff's claims be dismissed without prejudice, the Court recommends that the DOC Defendants' Motion for Summary Judgment, [Docket No. 75], be **GRANTED**.[3]

### III. Defendant Centurion's Motion to Dismiss. [Docket No. 69].

Defendant Centurion seeks an Order of this Court dismissing with prejudice Plaintiff's claims as alleged against Defendant Centurion. (Def. Centurion Mot. [Docket No. 69]; Def. Centurion's Proposed Order [Docket No. 72]). In support of this request, Defendant Centurion also contends that Plaintiff has failed to exhaust his administrative remedies. (Def. Centurion's Mem. [Docket No. 70]).[4]

---

[3] Although the Eighth Circuit Court of Appeals has in limited instances reversed the granting of a motion for summary judgment in a case in which an inmate failed to exhaust his administrative remedies, the Eighth Circuit Court of Appeals has only done so in cases where the district court also considered the merits of the inmate's claims and entered a dismissal with prejudice. Barbee v. Corr. Med. Servs., 394 F. App'x 337, 338 (8th Cir. 2010); Porter v. Sturm, 781 F.3d 448, 452 (8th Cir. 2015). In these same cases, the Eighth Circuit Court of Appeals has confirmed that dismissal without prejudice is the proper remedy when an inmate fails to exhaust his administrative remedies. Barbee, 394 F. App'x at 338; Porter, 781 F.3d at 452. Accordingly, to the extent it may be construed that the DOC Defendants' Motion requests that Plaintiff's claims be dismissed with prejudice, the Court recommends that portion of the DOC Defendants' Motion for Summary Judgment, [Docket No. 75], be **DENIED**. See, Barbee v. Corr. Med. Servs., 394 F. App'x 337, 338 (8th Cir. 2010); Porter v. Sturm, 781 F.3d 448, 452 (8th Cir. 2015).

[4] In the alternative, under Rule 12(b)(6), Defendant Centurion argues that Plaintiff has failed to state a claim upon which relief may be granted. Because the Court recommends dismissal of the Plaintiff's claims against Defendant Centurion on other grounds, the Court need not address Centurion's Rule 12(b)(6) arguments.

The Court has already determined that Plaintiff failed to exhaust his available administrative remedies before filing the present action. The Court will not repeat its analysis here. It is sufficient to state that Plaintiff's administrative remedies were available to him within the meaning of Ross, and Plaintiff failed to exhaust those available administrative remedies. The exhaustion of administrative remedies requirement applies equally to Plaintiff's claims against private parties like Defendant Centurion. See, e.g., Harvey v. Minnesota Dep't of Corr., No. 21-cv-346 (WMW/JFD), 2021 WL 6808297, at *7 (D. Minn. Oct. 14, 2021), report and recommendation adopted as modified, 2022 WL 35748 (D. Minn. Jan. 4, 2022), aff'd, No. 22-1192, 2022 WL 1931060 (8th Cir. June 6, 2022); Bailey v. Minnesota Dep't of Corr., No. 21-cv-1927 (PAM/BRT), Order [Docket No. 69] (D. Minn. May 18, 2022).

Thus, dismissal of Plaintiff's claim is mandatory. See, e.g., Booth v. Churner, 532 U.S. 731, 741 (2001); Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000). The dismissal of Plaintiff's claim is required to be a dismissal without prejudice. See, Barbee v. Corr. Med. Servs., 394 F. App'x 337, 338 (8th Cir. 2010); Porter v. Sturm, 781 F.3d 448, 452 (8th Cir. 2015).

Therefore, to the extent Defendant Centurion's Motion requests that Plaintiff's claims be dismissed with prejudice, the Court recommends that the Defendant Centurion's Motion to Dismiss, [Docket No. 69], be **DENIED**. See, Barbee v. Corr. Med. Servs., 394 F. App'x 337, 338 (8th Cir. 2010); Porter v. Sturm, 781 F.3d 448, 452 (8th Cir. 2015). To the extent Defendant Centurion's Motion request that Plaintiff's claims be dismissed without prejudice, the Court recommends that the Defendant Centurion's Motion to Dismiss, [Docket No. 69], be **GRANTED**.

## IV. Conclusion

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant Centurion's Motion to Dismiss, [Docket No. 69], be **GRANTED in part** and **DENIED in part**, as set forth above;

2. The DOC Defendants' Motion for Summary Judgment, [Docket No. 75], be **GRANTED in part** and **DENIED in part**, as set forth above; and

3. All of Plaintiff's claims be **DISMISSED** in their entirety **without prejudice**.


Dated: July 22, 2022                                           s/Leo I. Brisbois
                                                               Hon. Leo I. Brisbois
                                                               United States Magistrate Judge


# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).